U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 06-02808

ORDER DISMISSING CASE WITH PREJUDICE FOR ONE YEAR AND WITH
OTHER CONDITIONS

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/02/2006**



US Bankruptcy Court Judge
District of South Carolina

Entered: 10/03/2006

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: Kindley F. Davis and Ruby B. Davis, | Chapter 13 |
| | Case No. 06-02808-dd |
| | ORDER DISMISSING CASE |
| Debtors. | |

THIS MATTER is before the Court on the debtors' motion to dismiss this case, for confirmation of the chapter 13 plan, for dismissal of the case and an objection to the plan filed by Haiyan Lin, and for conversion of the case to chapter 7 on motion of Branch Banking and Trust Company of South Carolina. The issue here is whether the debtors' case should be dismissed or converted to chapter 7. The case is dismissed upon the conditions set forth.

<u>Findings of Fact</u>

1. Kindley F. Davis and Ruby B. Davis (hereinafter "Debtors") are husband and wife. They filed a joint, voluntary petition for relief under chapter 13 of the Bankruptcy Code on July 3, 2006. Debtors are represented in the bankruptcy case by J. Carolyn Stringer, Esq.

2. Debtors are indebted to Branch Banking and Trust Company of South Carolina (hereinafter "BB&T"), which debt is or was secured by a mortgage on real property located at 1311 Rosewood Drive, Columbia (Richland County), South Carolina and as to which a Confession of Judgment was signed April 26, 1996 and enrolled in Richland County, South Carolina on August 14, 1996. The Richland County judgment was enrolled in Lexington County, South Carolina on September 24, 1996.

3. Debtors also own real property located at 2010 Shull Avenue (a/k/a Shull Island

Road), Gilbert (Lexington County), South Carolina, which property is the subject of a mortgage in favor of JP Morgan Chase Bank.

4. Mr. Davis owned and operated Columbia Welding, a sole proprietorship, for many years.

5. Mr. Davis agreed, pre-petition to sell Columbia Welding as a going concern to Haiyan Lin (hereinafter "Ms. Lin") for the sum of $300,000.00. Mr. Davis testified that he intended the sale to include the real property on Rosewood Drive but that his wife, a co-owner of the real estate, later refused to sign a contract for the sale of the real estate. Mr. Davis received a $35,000.00 "down payment" on this contract of sale. He used the money to pay creditors. Mr. Davis told Ms. Lin that he would be unable to complete the transaction and that he would return the money to her. She refused to accept the money and demanded compliance with the contract. Mr. Davis has remained in control of the business and has continued to operate it.

6. Debtors have continued to market the Rosewood Drive real estate and had entered into a contract for the sale of the property to Toinette Reed. The sale did not close as provided in the contract.

7. The Debtors' petition was not accompanied by all of the required lists, schedules and statements. The Debtors later filed the schedules and a plan, but not a Statement of Financial Affairs. The proposed plan was filed July 18, 2006. The proposed plan would have paid all creditors in full. The Debtors requested and received a brief extension of time to file the statement of financial affairs. The Statement of Financial Affairs was filed July 28, 2006.

8. The Columbia Welding business has been in decline for a number of years. The

health of Debtors, especially that of Mrs. Davis, is not good. Health problems of the Debtors have accelerated the decline of the business. The questioned, but un-controverted proof was that Mrs. Davis' health became worse following the filing of the bankruptcy case, that she was hospitalized and that Mr. Davis attended her. Mr. Davis was injured following the filing of the bankruptcy, further drawing his attention away from the business.

     9. The reports of income for the business that were used to support the proposed plan were not accurate, current statements of income. The projected income levels had not been achieved for some time and Mr. Davis was aware or should have been aware of this. Mr. Davis testified to his hope that he could revive the business. Mr. and Mrs. Davis' son was responsible for the business for at least some period of time and he modernized the accounting process by implementing the use of computer software to track receivables, income and expenses. Mr. Davis retrieved some of this information in connection with the filing of a plan, however it was not reliable. The actual income of the Debtors will not fund the plan payments proposed by the Debtors. The Statement of Financial Affairs bears proof that the plan is not feasible based solely on the Debtors' Social Security income and the earnings from the business. Other income or income potential is available. The sale of the business and real property, whether to Ms. Lin, Toinette Reed or some other party, would generate cash or a stream of income that the Debtors could rely on in dealing with the creditors.

     10. The bankruptcy filing was prompted by an order of sale of the Shull Island Road property, issued in the Court of Common Pleas for Lexington County, South Carolina by the Master in Equity. The property was to be sold on the morning of July 3, 2006, with the proceeds of sale applied to the judgment in favor of BB&T. The bankruptcy filing stayed the

sale. At the time of the bankruptcy filing the lien of the nearly 10 year old judgment was approaching the end of its life.

11. Ms. Lin filed a motion to extend time to file a claim and to object to the plan on August 16, 2006 and a motion to dismiss the plan of Debtors on August 18, 2006 (the actual relief sought appears to be dismissal of the case).

12. The Debtors attended a meeting of creditors and filed their motion to dismiss on August 24, 2006. BB&T objected to the motion and subsequently, but on the same day, filed a motion to convert.

## Conclusions of Law

Before the Court are motions seeking competing relief, dismissal or conversion of the case. The Bankruptcy Code provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." § 1307(b). The Court turns first to doctrines of statutory construction. "When interpreting a statute, [the court looks] first to the language." *Richardson v. United States*, 526 U.S. 813, 818 (1999). "[I]n any case of statutory construction, [the] analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (citation and internal quotation marks omitted).

Despite the seemingly clear language, the courts, including Courts of Appeal, are split in the interpretation of § 1307. This division finds its genesis in another doctrine of statutory construction. "Courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous." *Discover Bank v.*

*Vaden*, 396 F.3d 366, 369 (4th Cir. 2005). Courts struggle with § 1307(b) and its "absolute" right to dismiss when juxtaposed to §1307(c)[1] and the authority for permissive conversion or dismissal for cause on motion of a party in interest. The decision to convert or dismiss under subsection (c) requires the weighing of the interests of the estate and creditors.

The Second Circuit describes § 1307(b) as conferring an absolute right to dismiss, holding:

> We hold that a debtor has an absolute right to dismiss a Chapter 13 petition under § 1307(b), subject only to the limitation explicitly stated in that provision. . . . The term 'shall' . . . generally is mandatory and leaves no room for the exercise of discretion by the trial court. . . . The mandatory nature of § 1307(b) becomes even clearer when the language of that provision is compared with the permissive language of § 1307(c). . . . This conclusion reflects the intention of Congress to create an entirely voluntary chapter of the Bankruptcy Code.

*Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616, 619-20 (2d Cir. 1999). *See also, Regan v. Ross,* 691 F.2d. 81, 86 fn. 14 (2d Cir. 1982) ("Moreover, chapter 13 is voluntary and at any time a debtor may opt out."); *Nash v. Kester*, 765 F.2d. 1410 (9th Cir. 1985); *Clearstory & Co. v. Blevins*, 225 B.R. 591 (D. Md. 1998) (Right to dismiss is absolute, even in the face of a previously filed motion to convert and allegations of bad faith); *In re Looney*, 90 B.R. 217 (Bankr. W.D. Va. 1988); *In re Beatty*, 162 B.R. 853 (9th Cir. BAP 1994); *In re Harper-Elder*, 184 B.R. 403 (Bankr. D. D.C. 1995).

The Eight Circuit describes and adopts the view that the authority of the court to convert or dismiss a case limits the debtor's absolute right to dismiss, stating:

---

[1] "Except as provided in subsection (c), on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . ." § 1307(c).

> We believe that same broad purpose as well as the principles of statutory construction employed in *Graven* apply equally well to the nearly identical provisions of Chapter 13 and the instant case. As in *Graven*, we are mindful that the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts. As in *Graven*, we also look to the overall purpose and design of the statute as a whole rather than viewing one subsection in isolation. In this case, [debtor] failed to offer any defense whatsoever to the Appellee's allegations of bad faith. . . . To allow [debtor] to respond to a motion to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses.

*In re Molitor*, 76 F.3d. 218, 220 (8th Cir. 1996)(citations omitted).(Following the Court's precedent in *In re Graven*, 936 F.2d. 378 (8th Cir. 1991) interpreting § 1208(b) of the Bankruptcy Code)  *See also In re Tatsis*, 72 B.R. 908 (Bankr. W.D. N.C. 1987); *Gaudet v. Kirshenbaum, Inv. Co. (In re Gaudet)*, 132 B.R. 670 (D. R.I. 1991); *In re Cobb*, 2000 WL 17840 (E.D. La. Jan. 11, 2000); *In re Crowell*, 292 B.R. 541 (Bankr. E.D. Tx. 2002).

A Bankruptcy Court for the Southern District of Florida describes the competing views:

> The proper interplay between § 1307(b) and § 1307 (c) is unsettled in the courts. Granting a debtor's motion to dismiss pursuant to § 1307(b) necessarily renders a pending creditor's motion to convert moot and renders § 1307(c) a nullity. On the other hand, granting a creditor's motion to convert requires denying a chapter 13 debtor's right to dismiss, thereby rendering the absence in subsection (b) of any condition to dismissal a nullity. Courts are divided as to which subsection controls. Some courts hold that subsection (b) trumps subsection (c) making the debtor's right to dismiss a chapter 13 case absolute. Other courts prefer to read the subsections together and then rule on the merits of the competing motions. These courts reason that Congress did not intend to give the debtor unfettered power

> to prevent conversion by simply filing a motion to dismiss whenever conversion was requested.

*In re Neiman*, 257 B.R. 105, 108 (Bankr. S.D. Fl. 2001)(citation and internal quotation marks omitted).

Despite the seemingly clear language of the statute, the courts have diverged in interpreting the language, creating ambiguity. A resort to legislative history is permitted to determine the meaning of an ambiguous statute. See *U.S. v. Ron Pair Enterp., Inc.*, 489 U.S. 235, 242 (1989). The legislative history confirms an absolute right to dismiss at any time:

> Subsections [1307](a) and (b) confirm, without qualification, the rights of a Chapter 13 debtor to convert the case to a liquidating bankruptcy case under Chapter 7 of title 11, at any time, or to have the Chapter 13 case dismissed. Waiver of any such right is unenforceable.

S. Rep. No. 95-989, at 141 (1978).

There is no controlling precedent in the Fourth Circuit. The issue has arisen in bankruptcy cases in South Carolina, but there are no published opinions. The District Court, in an unpublished order, affirmed the decision of the Bankruptcy Court and limited the debtor's right to dismiss a chapter 13 case in the face of a creditor's motion to convert based on the debtors' lack of eligibility for relief under § 109(e) and several continuances at the request of the debtors. When the debtors filed a motion to dismiss on the morning of the long delayed hearing to convert the case, the Court converted the case and determined that it would not rule on the motion to dismiss. The District Court stated, "[w]hile the right of the debtors' to dismiss their case 'at any time' no doubt exists within the parameters of Chapter 13, it should not be construed in derogation of the court's inherent power to prevent the abuse and misuse of the judicial process." *In re Couch*, C/A No. 81-2691-1 slip op. at 3. (D. S.C. May 7, 1982) *affirmed by unpublished opinion, sub. nom. Couch v. Center Brothers,*

*Inc. (In re Couch)*, C/A No. 82-1485 (4th Cir. October 5, 1983). Unpublished opinions of the Court of Appeals are not binding precedent in the Fourth Circuit pursuant to its Local Rule of Court 36(c). Additionally, "[t]he reasoning of district judges is of course entitled to respect, but the decision of a district judge cannot be controlling precedent." *FutureSource LLC v. Reuters*, 312 F.3d. 281, 283 (7th Cir. 2002). "[T]he modern trend [is] that a bankruptcy court is not bound by *stare decisis* to follow the decision of a single district judge in a multi-judge district." *In re Baker*, 264 B.R. 759, 762 (Bankr. M.D. Fl. 2001); *In re Finley, Kumble et. al.*, 160 B.R. 882, 898 (Bankr. S.D. N.Y. 1993); *In re Shattuc Cable Corp.*, 138 B.R. 557, 566-67 (Bankr. N.D. Il. 1992).

*Couch* is persuasive but not binding authority. Its utility, if authoritative given its age and the fact that it has not been generally followed in the circuit, is limited to the facts of that case. To the extent that there is a limitation on the absolute right of a debtor to dismiss a case pursuant to § 1307(b) in this circuit, other than by virtue of a prior conversion of the case, it is limited to the unusual and limited circumstances of *Couch*. There the creditor filed a motion to dismiss the case and later amended the motion to seek conversion. The debtors delayed the administration of their case by seeking continuances to obtain appraisals and to amend documents that they never actually amended. The debtors' motion to dismiss was filed on the morning of the hearing on the creditor's motion to convert. The debtors did not contest that conversion was in the best interests of the creditors. The focus of *Couch* was abuse of the bankruptcy system and the timing of the motion to dismiss.

BB&T argues that the Debtors filed the petition in bad faith. This is Debtors' first bankruptcy filing. The evidence before the Court is that Mr. and Mrs. Davis' plan proposal is not feasible, yet, while the business had been in decline for some time, there was a time

when the business produced income sufficient to fund the plan, at least on paper.  Mrs. Davis' health has continued to decline after the filing and she has required additional medical care.  Mr. and Mrs. Davis painted the rosiest of pictures with their initial court filings and in their plan.  The picture was not realistic but the demeanor of Mr. Davis as a witness did not support a finding of bad faith.  BB&T chose the time to initiate the sale of property in satisfaction of its judgment, which is about to expire, and did not leave sufficient time for contests and appeals in state court nor for the potential that the Debtors might avail themselves of bankruptcy protection.  See generally *Wells v. A.C. Sutton*, 299 S.C. 19 (1989)(Holding that execution is the only means to enforce a judgment.  That a judgment is extinguished after 10 years from entry and that appeals do not extend the 10 year period.  The Court notes that "it does not condone efforts . . . to secrete assets to avoid payment of judgments. . . . [and it] does not criticize appropriate use of the appellate process to obtain review of orders. . . ." Creditors should proceed expeditiously to conclude efforts to collect judgments within the 10 year period).   The Debtors did not conceal assets, instead, the ownership of the real property was open and a matter of public record.  While the Debtors' portrayal of their financial wherewithal is not exemplary, the proof falls short of establishing bad faith.

     The clear language of § 1307(b) is that the court *shall* dismiss a Chapter 13 case on request of the debtor and that the debtor may make the request at any time.  Waivers of the right to dismiss are not enforceable.  While there may be some case of egregious conduct warranting a denial of a debtor's motion to dismiss based on proof of abuse of the bankruptcy system, the abusive timing of the filing of the motion to dismiss, or otherwise, this is not that case.  This case should be dismissed on the motion of the Debtors.

Dismissal of the case, even as a matter of right, is not necessarily unconditioned in every circumstance. Counterbalancing the potential for abuse in timing the dismissal of cases is the fact that the debtor gives up the protection of the bankruptcy court and is subject to the provisions of state law. Where, as here, it is possible that a creditor's rights under state law may have changed, there are other remedies. A debtor can not invoke the dismissal of his Chapter 13 case pursuant to the authority of § 1307(b) by simply filing a notice of dismissal in the same fashion as a debtor converts to chapter 7 pursuant to §1307(a). Notice to creditors and an opportunity for hearing is required because, if for no other reason, the court may condition the dismissal as provided by § 349. This is an important protection for creditors. Additionally, Congress has severely restricted serial filings and provided remedies for abuse of the bankruptcy system through the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.[2]

BB&T and Ms. Lin held important rights against the Debtors immediately prior to the filing of the bankruptcy case. The statutory life of the BB&T judgment expired no later than August 14, 2006[3], but for the stay and the provisions of § 108(c). Ms. Lin's rights, if any, to enforce her contract with Mr. Davis are also at issue. To the extent allowed under the statute, the re-vesting of property of the estate in Mr. and Mrs. Davis upon dismissal is subject to the interests of BB&T and Ms. Lin immediately prior to the filing, which by this order and pursuant to § 349(b)(3) are restored as if the case had not been filed, although the extended time pursuant to § 108(c) shall be available to the creditors.

---

[2]  Pub. L. 109-8, (April 20, 2005), codified throughout Title 11 and otherwise.

[3]  This does not foreclose the pursuit by debtors of the contention in state court that the judgment expired April 26, 2006, 10 years following execution of the confession of judgment rather than 10 years following enrollment of the judgment.

Applicable nonbankruptcy law, i.e. South Carolina law, fixes the period for beginning and continuing the execution against the Debtors (and by bankruptcy definition, against property of debtors) and the period had not expired[4] before the filing of the petition. The period does not expire until the later of the two time periods set forth. The issue of the suspension of the running of the time period while the Debtors were in bankruptcy is for another day. *See* § 108(c)(1) and, for example, *Aslanidis v.United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993); *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 297 (5th Cir. 1995).

Finally, the Debtors are prohibited from filing of a subsequent petition under title 11 for a period of one year pursuant to the authority of this Court to otherwise order prejudice to re-filing. § 349(a)  This bar to re-filing runs concurrently with § 109(g), if applicable. Cause for this additional relief exists in the Debtors' seeking dismissal at this juncture of the case and the expressed desire to have the issues resolved under state law. These additional protections may or may not be sufficient to permit BB&T to complete the judgment levy and execution process. BB&T bears some burden in its choice of the time to institute the sales process.

AND IT IS SO ORDERED.

---

[4] Again, without prejudice to the right of the Debtors to argue that the 10 year period had already expired.